**LAW OFFICE OF RESHMA KAMATH**
**RESHMA KAMATH, Cal. Bar No. 333800**
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Counsel for Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES JENKINS, JR., an individual; JAMES JENKINS III, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SHARON JIMENEZ, ET AL.,<br>Defendants. | Case No.: 8:23-cv-01317-JWH-DFM<br><br>**PLAINTIFFS JAMES JENKINS JR. and JAMES JENKINS III'S AMENDED OPPOSITION TO MOTION TO SET ASIDE DEFAULT OF DEFENDANT SHARON JIMENEZ** |

**OPPOSITION**

## INTRODUCTION

Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III** request that the Defendant SHARON JIMENEZ's untimely motion to set aside default must be **DENIED**, because Defendants Jimenez failed to move the court timely, failed to have a meritorious defense, and failed to show a lack of culpability. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle (Mesle)*, 615 F.3d 1085, 1091 n. 1 (9th Cir. 2010).

Thus, in the substantive tripartite test, Defendant SHARON JIMENEZ failed each factor for any good cause whatsoever and thus, default should be trailed to trial giving Defendants the opportunity to defend until trial, because no good cause exists whatsoever. *United States v. Mesle*, 615 F.3d 1085 (9th Cir. 2010); *Franchise Holding II v. Huntington Rests. Group, Inc.,* 375 F.3d 922, 925 (9th Cir. 2004)).

## FACTUAL BACKGROUND

From November 17, 2023, November 19, 2023 to December 20, 2023, Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III** afforded proper notice and warning to Defendant SHARON JIMENEZ prior to the entry of default both in writing and verbally via telephonic call, e-mail, mail-service and text-message.

Defendant SHARON JIMENEZ replied and understood that default was being taken.

Yet, Defendant SHARON JIMENEZ failed to take any action to set aside default. Same with the attorneys of Defendants who engaged in dilatory tactics failing to file a motion to set aside until August 2024. There is neither justification nor good cause to set aside defaults against Defendant in August 2024.

After harassment from Defendants COLDWELL and SHARON JIMENEZ in the years 2022 and 2023, Plaintiffs have successfully moved to Costa Rica after selling their United States house in Laguna Nigel, Orange County, California.

2

**OPPOSITION**

Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III** did not want Defendant Sharon to start concocting her stories while Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III** were selling their house.

Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III** did not want Defendants SHARON JIMENEZ to know about this sale in Orange County, because Defendant Sharon had prior usurped Plaintiffs' house in Laguna Niguel for months while Plaintiff dad-Jenkins was alone, and while causing Plaintiff son-Jenkins to be incarcerated.

**Plaintiff JENKINS JR.** is a senior citizen, an Army veteran, and a retired sheriff.

**Plaintiff JENKINS JR.** had suffered a gunshot to the head while a sheriff and, as a result, suffers from severe disabilities including having only seventeen percent (17%) of his vision as well as cognitive and speech difficulties.

Plaintiff-son Jenkins' mom, JoAnn Jenkins died on Memorial Day, 2021, passing away from complications with Covid-19 and pre-existing conditions.

After the passing of JoAnn Jenkins, Defendant SHARON JIMENEZ, solicited Plaintiff JENKINS JR., and stayed at Plaintiffs' Laguna Niguel house overnight in her role as a property-broker.

Defendant SHARON JIMENEZ took advantage of the blinded, bed-ridden dad, James Jenkins, Jr. – and pretended she was selling their house. Defendant SHARON JIMENEZ started using Plaintiff James Jenkins, Jr.'s credit-cards to hire companies, unbeknownst to Plaintiffs.

Defendant SHARON JIMENEZ also caused Plaintiff-son-Jenkins to be incarcerated.

Even to this day, Defendant SHARON JIMENEZ falsifies, defames, and misrepresents making up wild accusations such as "James Jenkins, Jr. is dead" and spreading such horrific rumors to Plaintiffs' relatives and friends, such as Minerva and Kia.

3

**OPPOSITION**

Yet, Defendant SHARON JIMENEZ spread more falsities and misrepresentations to the defendants' attorney, such as "James Jenkins, Jr. is dead".

This Defendant SHARON JIMENEZ's attorney, Eric Garner/Daniel Agrella then spread those defamatory statements in slander and libel onto Plaintiffs' counsel. Plaintiffs were scared that Defendant SHARON JIMENEZ would create one more roadblock.

Defendant SHARON JIMENEZ is good with her crocodile tears and her dramatic stories.

In October 2023, Reshma Kamath helped Plaintiff Jenkins, Jr. record his entire testimony about Defendant SHARON JIMENEZ's atrocities upon him.

Plaintiff-dad-Jenkins was in a medically serious condition, and Reshma Kamath wanted to preserve my dad's testimony against Defendants for posterity before a California-licensed notary. This is video-recorded.

## **LAW**

In determining whether to set aside default, a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default would prejudice the party. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle (Mesle)*, 615 F.3d 1085, 1091 n. 1 (9th Cir. 2010).

What constitutes "good cause" is within the discretion of the trial court. See *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986); *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.,* 375 F.3d 922, 925 (9th Cir. 2004). The burden rests with the moving party. See *Id.* at 926.

///

///

///

4

**OPPOSITION**



# ARGUMENT

## DEFENDANT SHARON JIMENEZ'S DEFAULT SHOULD BE TRAILED TO TRIAL BECAUSE DEFENDANT'S CONDUCT WAS CULPABLE, NO GOOD CAUSE EXISTS AND FILING THE MOTION WAS UNTIMELY.

### I. DEFENDANT SHARON'S CONDUCT IS CULPABLE (INCLUDING DEFENDANT'S OMMISSIONS IN NON-FILING OF A RESPONSIVE PLEADING PRIOR TO ENTRY OF DEFAULT).

Defendant Sharon's conduct was devious and in bad-faith in failing to respond – often Defendant Sharon's attorney, Daniel Agrella, citing personal excuses such as their wife's pregnancy even when another attorney, Eric Grinder, from their law firm was available to file a responsive pleading, and/or thereafter, a motion to set aside default.

There was no "swiftly" set aside of default – as the court may characterize as it does to protect White and male attorneys from shame, embarrassment and guilt.

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Group*, 244 F.3d at 697 (emphasis in original) (quoting *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)); see also *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) ( defendant "intentionally declined" service).

The court has "typically held that a defendant's conduct was culpable for purposes of the [ good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group*, 244 F.3d at 697, 698.

*In this instant case*, Defendant Sharon went on to deliberately, willfully and with bad-faith ignore that default would be taken. Defendant Sharon made no effort to file a responsive pleading, and/or any kind of filing with the court.

Thereafter, Defendant Sharon was taken on as a client from Defendant SHARON JIMENEZ's attorney, who also failed to timely move for vacation of a default.

Plaintiffs state that Defendants' attorneys, Eric Grinder and Daniel Agrella delayed and delayed for months – until August 2024 with no meet-and-confer with opposing counsel and no effort to communicate. The non-responsiveness of Eric Grinder and Daniel Agrella, and the racial tactics of the court, John Holcomb, together would prejudice Plaintiffs, i.e., eighty-two-year-old disabled sheriff James Jenkins, Jr. and his son, fifty-one-years-old, James Jenkins III.

Plaintiffs further state that Defendant Sharon not only had actual notice of the impending request for entry of default directly from Plaintiffs' counsel in both written and verbal communication, but also had constructive notice from her attorneys in reviewing the court docket.

## A. DEFENDANT SHARON'S DELAY COUPLED WITH BAD-FAITH WILL PREJUDICE PLAINTIFFS JAMES JENKINS, JR. AND JAMES JENKINS III.

This is not delay alone. The standard in determining prejudice is whether the plaintiff's ability to pursue his claim will be hindered if the entry of default is set aside. See *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). If a delay will result in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion," the delay is considered prejudicial. *Knoebber*, 244 F.3d at 701 (citing *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

This delay in moving to set aside default would result in tangible harm affecting Plaintiffs' ability to pursue their claims. Plaintiffs do not assert that Defendants' delay resulted in loss of evidence. Plaintiffs argue that Defendants' delay made seeking discovery and documents more difficult with non-responsive attorney providing personal excuses, and that plaintiffs' ability to recover on any eventual judgment or remedy maybe thwarted. The alleged harm to Plaintiffs'

reputation was exacerbated by Defendant's delay. Accordingly, Plaintiffs have demonstrated that they will be prejudiced if the entry of default is set aside.

## II. DEFENDANT SHARON'S DEFAULT SHOULD BE TRAILED TO TRIAL

Even if this default is trailed until trial, Defendant Sharon can defend on the merits and has an opportunity to litigate on the merits. There will be no prejudice to either party in maintaining *status quo* – particularly, because of Defendant Sharon's culpable conduct.

The court has the discretion to trail the default to trial. This is not a default judgment of extreme or drastic measure preventing any party from litigating until trial. Because of Defendant Sharon's bad-faith and complete lack of responsive pleading prior to the filing of Plaintiffs' request for entry of default and even thereafter, the court must not set aside the default until trial.

## III. DEFENDANT SHARON'S DEFAULT WAS PROPERLY TAKEN AND ENTERED WITH NOTICE AND WARNING TO DEFENDANT IN WRITING AND VERBALLY.

Plaintiffs' counsel had properly noticed and warning per the case law within her ethical and legal duties of the forthcoming entry of default request to the court. *Au-Yang v. Barton*, 21 Cal.4th 958 (Cal. 1999); *Fasuyi v. Permatex, Inc.,* 167 Cal.App.4th 681 (Cal. Ct. App. 2008).

However, Defendant Sharon did nothing as stated in the preceding paragraphs from November 2023 until July/August 2023. Over a ten-month delay coupled with other factors is prejudicial to Plaintiffs JAMES JENKINS, JR. and JAMES JENKINS, III.

## IV. DEFENDANT SHARON'S ATTORNEYS DELAYED IN FILING A MOTION TO SET ASIDE DEFAULT FOR OVER TEN MONTHS.

### a. RELIEF FROM DEFAULT WAS NOT TIMELY.

From November/December 2023, Defendant filing a motion to set aside in August 2024 was an untimely move to set aside default from the attorneys of Defendants.

7

**OPPOSITION**

Plaintiffs' counsel had properly noticed and provided warning to Defendant SHARON JIMENEZ, per the case law within her ethical and legal duties as counsel of Defendant JIMENEZ's forthcoming entry of default request to the court.

However, Defendant Sharon did nothing in bad-faith as stated in the preceding paragraphs. Over a ten-month-delay from December 2023 to August 2024 is untimely.

## V.     ENTERING DEFAULT ESTABLISHES DEFENDANT SHARON'S LIABILITY

Defendant Sharon's default establishes liability. *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011) (alterations omitted); *CKR L. LLP v. Anderson Invs. Int'l, LLC*, 544 F.Supp.3d 474, 482-83 (S.D.N.Y. 2021); *Greyhound Exhibit group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Defendant SHARON JIMENEZ's default renders a decision on the merits practical, and possible. Many-a-cases have trailed default to trial (without default judgment).

Defendant Sharon's default establishes liability and takes as true Plaintiffs' factual statements in the complaint. See, *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) (entry of default "conclusively establishes the liability" of the defaulting defendant). See also *Philip Morris USA, Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494, 499 (C.D. Cal. 2003) (in failing to answer or otherwise respond to complaint, defendants deemed to have admitted truth of plaintiff's averments as to liability). If an entry of default is made, the Court accepts all well-pleaded factual allegations in the complaint as true. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). There is no reason or basis to set aside the default because Defendant Sharon ha culpable conduct in intentionally failing to willfully evading service even after several attempts and then failing to file any response with the court – even after notice and warning of forthcoming default entry was communicated actually and constructively to Defendant Sharon.

8

**OPPOSITION**

## VI. NO GOOD CAUSE EXISTS TO SET ASIDE DEFENDANT SHARON'S DEFAULT – DEFENDANT CAN CONTINUE TO DEFEND THE CASE TO TRIAL.

Pursuant to the good-cause factor-test, no good cause exists. The Ninth Circuit cites the three-factor test to determine good cause as set forth in *United States v. Mesle*, 615 F.3d 1085 (9th Cir. 2010): "To determine 'good cause,' a court must 'consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." *Id.* at 1091 (quoting *Franchise Holding II v. Huntington Rests. Group, Inc.,* 375 F.3d 922, 925 (9th Cir. 2004)).

Pursuant to *Mesle*, "a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*

As the party seeking relief from the entry of default, defendant bears the burden of showing that the three *Mesle* factors favor such relief. See *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).

But Defendant SHARON's moving papers fail to establish even one of the *Mesle* factors. Thus, this court must REFUSE to set aside the default taken properly.

## VII. DEFENDANT SHARON FAILS TO HAVE A MERITORIOUS DEFENSE TO SET ASIDE DEFAULT.

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." See *TCI Group*, 244 F.3d at 700 (citations omitted). The basic question for the "meritorious defense" requirement is to allege sufficient facts that, if true, would constitute a defense. The defaulting party must set forth a defense "which at least raises a serious question

9

**OPPOSITION**

regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). In this case, the defaulting party has failed to meet that minimum burden developed on legal and factual grounds.

However, Defendant Sharon's moving papers fail to allege such sufficient facts that could constitute a defense for later litigation. Defendant Sharon failed to meet even that minimum burden. Thus, the default should be trailed to trial – where Defendant would have the opportunity to litigate on the merits in the interim and prove the sufficient facts then.

In considering whether a defendant has a meritorious defense, a court must determine "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters Trust Funds v. Stone,* 794 F.2d 508, 513 (9th Cir. 1986).

It is possible that Defendant Sharon concocts further stories about the property and destroys evidence – as she may have already done. There is a high likelihood that the outcome of the case after trial will be different. Hence, the default against Defendant Sharon must be trialed to trial to keep her on the hook of liability.

**VIII. THIS IS A DEFAULT - NOT A DEFAULT JUDGMENT – AND THUS, IS NOT A DRASTIC STEP AND NOT EXTREME.**

None of the three factors in the "good cause" analysis for setting aside a default under Rule 55(c) favored Defendant, i.e., Defendant Sharon's conduct leading to the default was culpable; she failed to allege facts sufficient to establish even one meritorious defense; and that setting aside the default would prejudice the Plaintiffs Jenkins, Jr. and Jenkins III.

Since this is not a judgment by default which is a drastic step appropriate only in extreme circumstances" *Falk*, 739 F.2d at 463, this is only a default that can be discretionarily trailed to trial.

10

**OPPOSITION**

Accordingly, there would be no abuse of discretion if the court properly applies the afore-stated standards and rules rather than racially- and misogynistically- abusing its discretion.

The court's constant changing of the hearings and providing a slew of scheduling notices is justification to file the Plaintiffs' Opposition aside from the fourteen days rule to file the opposing pleading.

## CONCLUSION

Based on the foregoing argument and analysis, Plaintiffs request that the motion to set aside default be **DENIED**, because Defendant SHARON JIMENEZ failed to move the court timely, failed to have a meritorious defense, and failed to show a lack of culpability. There is no good cause to set aside the default under the three-factor test and numerous substantive case-law even provided the discretion under Fed. *Rul. Civ. Proc. R.* 55.

**DATED: August 17, 2024**          **LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

**RESHMA KAMATH**,
Counsel for Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III**

11



**OPPOSITION**