**LAW OFFICE OF RESHMA KAMATH**
RESHMA KAMATH, Cal. Bar No. 333800
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Counsel for Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES JENKINS, JR., an individual; JAMES JENKINS III, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SHARON JIMENEZ, ET AL.,<br>Defendants. | Case No.: 8:23-cv-01317-JWH-DFM<br><br>**DECLARATION OF RESHMA KAMATH IN SUPPORT OF PLAINTIFFS JAMES JENKINS JR. and JAMES JENKINS III'S AMENDED OPPOSITION TO MOTION TO SET ASIDE DEFAULT OF DEFENDANT SHARON JIMENEZ** |

1

**OPPOSITION**

# DECLARATION OF RESHMA KAMATH IN SUPPORT OF PLAINTIFFS JAMES JENKINS JR. and JAMES JENKINS III'S AMENDED OPPOSITION TO MOTION TO SET ASIDE DEFAULT OF DEFENDANT SHARON JIMENEZ

I, RESHMA KAMATH, declare that:

1. I am counsel for Plaintiffs JAMES JENKINS, JR. and JAMES JENKINS III in this afore-captioned matter.

2. I am licensed with the State Bar of California and can duly practice law in this State.

3. I had provided timely actual notice and warning to Defendant Sharon Jimenez in November 2023 and December 2023 of the forthcoming default to be taken with the court. **EXHIBIT A.**

4. Defendant Sharon Jimenez had contacted – after she evaded personal service of complaint, summons, and case-initiating documents for months – and left a voice-mail for me in November 2023. I promptly returned her phone-call but she was non-responsive again.

5. Thereafter, Defendant Sharon Jimenez communicated with me via text and e-mail in December 2023. I had notified Ms. Jimenez of the default motion to be filed against her because she had not responded to the complaint within the stated-time. This occurred in December 2023.

6. However, Defendant Sharon Jimenez who is more than savvy with the courts failed to appear and file anything with the court.

**OPPOSITION**



7. The reason Defendant Jimenez is savvy because she has filed state court actions and gotten away with no service upon Plaintiffs and even obstructed Plaintiffs' former attorney, Dennis Russell (whom Plaintiffs are filing a State Bar complaint against for misconduct) from filing a lawsuit against Defendant Jimenez. Instead, Defendant Jimenez went and filed a small-claims lawsuit against Plaintiffs.

8. SHARON JIMENEZ's untimely motion to set aside default must be DENIED, because Defendants Jimenez failed to move the court timely, failed to have a meritorious defense, and failed to show a lack of culpability. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle (Mesle)*, 615 F.3d 1085, 1091 n. 1 (9th Cir. 2010).

9. A ten-month delay coupled after having retained two attorneys, Eric Ginder and Daniel Agrella, shows bad-faith, intentionality, willfulness and deviousness.

10. Thus, in the substantive tripartite test, Defendant SHARON JIMENEZ failed each factor for any good cause whatsoever and thus, default should be trailed to trial giving Defendants the opportunity to defend until trial, because no good cause exists whatsoever. *United States v. Mesle*, 615 F.3d 1085 (9th Cir. 2010); *Franchise Holding II v. Huntington Rests. Group, Inc.,* 375 F.3d 922, 925 (9th Cir. 2004)).

11. From November 17, 2023, November 19, 2023 to December 20, 2023, Plaintiffs JAMES JENKINS JR. and JAMES JENKINS III afforded proper notice and warning to Defendant SHARON JIMENEZ prior to the entry of default both in writing and verbally via telephonic call, e-mail, mail-service and text-message.

**OPPOSITION**

12. Defendant SHARON JIMENEZ replied to me and understood that default was being taken against her.

13. Yet, Defendant SHARON JIMENEZ failed to take any action to set aside default. Same with the attorneys of Defendants who engaged in dilatory tactics failing to file a motion to set aside until July/August 2024. There is neither justification nor good cause to set aside default against Defendant in July/August 2024.

14. After harassment from Defendants COLDWELL and SHARON JIMENEZ in the years 2022 and 2023, Plaintiffs have successfully moved to Costa Rica after selling their United States house in Orange County, California.

15. Plaintiffs JAMES JENKINS JR. and JAMES JENKINS III did not want Defendant Sharon to start concocting her stories while Plaintiffs JAMES JENKINS JR. and JAMES JENKINS III were selling their house. She did anyway.

16. Plaintiffs JAMES JENKINS JR. and JAMES JENKINS III did not want Defendants SHARON JIMENEZ to know about this sale in Orange County, because Defendant Sharon had prior usurped Plaintiffs' house in Laguna Niguel for months while Plaintiff dad-Jenkins was alone, and while causing Plaintiff son-Jenkins to be incarcerated.

17. Plaintiff JENKINS JR. had suffered a gunshot to the head while a sheriff and, as a result, suffers from severe disabilities including having only seventeen percent (17%) of his vision as well as cognitive and speech difficulties.

**OPPOSITION**

18. Defendant SHARON JIMENEZ took advantage of the blinded, bed-ridden dad, James Jenkins, Jr. – and pretended she was selling their house. Defendant SHARON JIMENEZ started using Plaintiff James Jenkins, Jr.'s credit-cards to hire companies, unbeknownst to Plaintiffs.

19. I know this fact in paragraph #18 because there was a state-court case that I got successfully got dismissed where an unknown medical center was seeking damages against Plaintiff JAMES JENKINS, JR. for work unbeknownst to him and/or his son, Plaintiff JAMES JENKINS, III. Defendant SHARON JIMENEZ had retained that medical nursing and used expired credit-cards. **EXHIBIT B.**

20. Yet, Defendant SHARON JIMENEZ spread more falsities and misrepresentations to the defendants' attorney, such as "James Jenkins, Jr. is dead". I know this because there was an e-mail to me in July 2024 from Mr. Agrella stating this. **EXHIBIT C.**

21. This Defendant SHARON JIMENEZ's attorney, Eric Garner/Daniel Agrella then spread those defamatory statements in slander and libel onto Plaintiffs' counsel. Plaintiffs were scared that Defendant SHARON JIMENEZ would create one more roadblock.

22. In October 2023, I, Reshma Kamath, helped Plaintiff JENKINS, JR., record his entire testimony about Defendant SHARON JIMENEZ's atrocities upon him. I know this because I had arranged this session with the video-recorder and the notary to sit there while Plaintiff was speaking pursuant to his personal knowledge.

**OPPOSITION**

23. Plaintiff-dad-Jenkins was in a medically serious condition, and Reshma Kamath wanted to preserve Plaintiff-dad's testimony against Defendants for posterity before a California-licensed notary. This is video-recorded.

24. Defendant Sharon's conduct was devious and in bad-faith in failing to respond – often Defendant Sharon's attorney, Daniel Agrella, citing personal excuses such as their wife's pregnancy even when another attorney, Eric Ginder, from their law firm was available to file a responsive pleading, and/or thereafter, a motion to set aside default.

25. *In this instant case*, Defendant Sharon went on to deliberately, willfully and with bad-faith ignore that default would be taken. Defendant Sharon made no effort to file a responsive pleading timely, and/or make any kind of filing/ appearance with the court in the year 2023 and even in the first half of the year 2024.

26. Thereafter, Defendant Sharon was taken on as a client from Defendant Coldwell Banker's attorney, who also failed to timely move for vacation of a default.

27. Plaintiffs state that Defendants' attorneys, Eric Ginder and Daniel Agrella delayed for months – until July 2024 with no meet-and-confer prior to this with I, opposing counsel. The non-responsiveness of Eric Ginder and Daniel Agrella would prejudice Plaintiffs, i.e., eighty-two-year-old disabled sheriff James Jenkins, Jr. and his son, fifty-one-years-old, James Jenkins III.

**OPPOSITION**

28. Plaintiffs further state that Defendant Sharon not only had actual notice of the impending request for entry of default directly from Plaintiffs' counsel in both written and verbal communication, but also had constructive notice from her attorneys in reviewing the court docket.

29. Defendant and Defendant's attorneys' delay in moving to set aside default would result in tangible harm affecting Plaintiffs' ability to pursue their claims. Plaintiffs do not assert that Defendants' delay resulted in loss of evidence. Plaintiffs argue that Defendants' delay made seeking discovery and documents more difficult with non-responsive attorney providing personal excuses, and that plaintiffs' ability to recover on any eventual judgment or remedy maybe thwarted. The alleged harm to Plaintiffs' reputation was exacerbated with Defendant's delay. Accordingly, Plaintiffs have demonstrated that they will be prejudiced if the entry of default is set aside.

30. Even if this default is trailed until trial, Defendant Sharon can defend on the merits and has an opportunity to litigate on the merits. There will be no prejudice to either party in maintaining *status quo* – particularly, because of Defendant Sharon's culpable conduct.

31. The court has the discretion to trail the default to trial. This is not a default judgment of extreme or drastic measure preventing any party from litigating until trial. Because of Defendant Sharon's bad-faith and complete lack of responsive pleading prior to the filing of Plaintiffs' request for entry of default and even thereafter, the court must not set aside the default until trial.

**OPPOSITION**

32. I, as Plaintiffs' counsel, had properly noticed and warning per the case law within her ethical and legal duties of the forthcoming entry of default request to the court. *Au-Yang v. Barton*, 21 Cal.4th 958 (Cal. 1999); *Fasuyi v. Permatex, Inc.,* 167 Cal.App.4th 681 (Cal. Ct. App. 2008).

33. However, Defendant Sharon did nothing as stated in the preceding paragraphs from November 2023 until July/August 2023. Over a ten-month delay coupled with other factors is prejudicial to Plaintiffs JAMES JENKINS, JR. and JAMES JENKINS, III.

34. From November/December 2023, Defendant filing a motion to set aside in August 2024 was an untimely move to set aside default from the attorneys of Defendants.

35. Plaintiffs' counsel had properly noticed and provided warning to Defendant SHARON JIMENEZ, per the case law within her ethical and legal duties as counsel of Defendant JIMENEZ's forthcoming entry of default request in December 2023. However, Defendant Sharon did nothing in bad-faith as stated in the preceding paragraphs. Over a ten-month-delay from December 2023 to August 2024 is untimely.

36. There is no reason or basis to set aside the default because Defendant Sharon demonstrated culpable conduct in intentionally failing to willfully evading service even after several attempts and then failing to file any response with the court – even after notice and warning of forthcoming default entry was communicated actually and constructively to Defendant Sharon.

**OPPOSITION**

Defendant SHARON's moving papers fail to establish even one of the *Mesle* factors as Plaintiffs stated in the moving papers. Thus, this court must REFUSE to set aside the default taken properly.

37. In this case, the defaulting party has failed to meet that minimum burden developed on legal and factual grounds to set any kind of defense.

38. However, Defendant Sharon's moving papers fail to allege such sufficient facts that could constitute a defense for later litigation. Defendant Sharon failed to meet even that minimum burden. Thus, the default should be trailed to trial – where Defendant would have the opportunity to litigate on the merits in the interim and prove the sufficient facts then.

39. It is possible that Defendant Sharon concocts further stories about the property and destroys evidence – as she may have already done. There is a high likelihood that the outcome of the case after trial will be different. Hence, the default against Defendant Sharon must be trialed to trial to keep her on the hook of liability.

40. None of the three factors in the "good cause" analysis for setting aside a default under Rule 55 favored Defendant, i.e., Defendant Sharon's conduct leading to the default was culpable; she failed to allege facts sufficient to establish even one meritorious defense; and that setting aside the default would prejudice the Plaintiffs Jenkins, Jr. and Jenkins III.

41. Accordingly, there would be no abuse of discretion if the court properly applies the afore-stated standards and rules.

**OPPOSITION**

42. The court's constant changing of the hearings and providing a slew of scheduling notices is justification to file the Plaintiffs' Opposition aside from the fourteen days rule to file the opposing pleading.

43. Based on the concurrently-filed opposition, this declaration, and Plaintiffs' declarations, Plaintiffs JAMES JENKINS, JR. and JAMES JENKINS, III, request that the motion to set aside default be DENIED, because Defendant SHARON JIMENEZ failed to move the court timely, failed to have a meritorious defense, and failed to show a lack of culpability. There is no good cause to set aside the default under the three-factor test and numerous substantive case-law even provided the discretion under Fed. *Rul. Civ. Proc. R.* 55.

///

I declare under the penalty of perjury under the laws of the United States of America and the laws of the State of California that the afore-stated statements are true and honest under penalty of perjury.

///

DATED: August 17, 2024              LAW OFFICE OF RESHMA KAMATH

*/S/ Reshma Kamath*

**RESHMA KAMATH**,
Counsel for Plaintiffs **JAMES JENKINS JR. and JAMES JENKINS III**

10

**OPPOSITION**